## BENJAMIN ELECTRIC MFG. CO. v. DALE CO. et al.

(Circuit Court, S. D. New York.    October 31, 1905.)

### No. 8,742.

PATENTS—INFRINGEMENT—CLUSTER LIGHTS.

The Benjamin patents, Nos. 721,774 and 721,777, granted on a divisional application and both relating to a cluster of electric lights, in which the electricity is conveyed to the lamps through plates, instead of by a separate wire to each, disclose sufficient mechanical improvement over prior structures to constitute patentable invention, although not novel in their electrical features. As so construed, *held* not infringed by a structure mechanically, but not electrically, different from those of the patents.

In Equity. On final hearing.

Seward Davis and Jones & Addington (W. Clyde Jones, Keene H. Addington, and Robert Lewis Ames, of counsel), for complainant.

William M. Stockbridge, for defendants.

HOLT, District Judge. This suit is brought to restrain the alleged infringement of two patents, Nos. 721,774 and 721,777, issued to Reuben B. Benjamin, and by him assigned to the complainant. The invention relates to an improvement in the arrangement of a cluster of electric lights. It provides, in substance, for a cluster of electric lights so arranged that, instead of separate wires connecting each lamp in the cluster, there are two leading-in wires, each connecting with two metallic plates insulated from each other, and so arranged that the electricity is conveyed to and from each of the lamps through the plates. An interference was declared between Benjamin's original application and an application for a patent for a similar invention by Nelson Weeks, and decided in favor of Benjamin. Benjamin thereupon added new claims to his application. A second interference with Weeks was declared, which again resulted in favor of Benjamin. Thereupon he added still further claims to his application, and a third interference was declared, which was again decided in favor of Benjamin. Benjamin's original application, in the course of these proceedings, had been divided and made into four applications, and after the decision on the third interference four patents were issued to Benjamin. The result of this repeated addition of claims to the pending applications is that the patent No. 721,774 now contains 46 claims, and the patent No. 721,777 contains 17 claims, making 63 in all. Many of these claims are substantially identical, and the excessive number of distinct claims inserted in the patent, most of which are expressed in substantially indistinguishable terms, serves no useful purpose, and simply makes burdensome the in-

vestigation of the claims. The complainant's counsel has stipulated to rely on only 17 claims of the first patent, and 9 claims of the second patent, making 26 claims in all relied upon. This number might have been further restricted without sacrificing any real rights of the complainant.

The complainant's claim is that the two patents relied on are capable of conjoint use, and that the defendant's structure infringes features of both patents. But it seems to me, in the first place, that it is very doubtful whether the second patent is not to be regarded as invalid because anticipated by the first patent. I can see no essential distinction between it and the first patent. Benjamin's original application included both forms of construction, and it is said that the Patent Office required that the application be divided. It was divided, into distinct applications, and both patents were issued at the same time. As I understand the rule, the patent numbered first takes precedence of the other. I cannot see anything in the claims of the second patent which is not substantially anticipated by the claims of the first patent, except the claim for a simple bushing in which the lamp is screwed. There was certainly nothing novel about that.

Assuming, however, that both patents can be regarded as of equal validity, the first question which arises is whether they show patentable invention, in view of the prior state of the art. Upon a careful consideration of the evidence, I am not able to see that they involve any electrical invention. The electrical arrangement for a wireless cluster of electric lamps shown in the Benjamin patents seems to me to have been substantially shown in the prior English patent to Brougham and in the Weeks patent, No. 601,106. Both these patents, however, were not well adapted to actual commercial use. The two Benjamin patents in suit, while using substantially the same electrical arrangement, had mechanical improvements which at once made a cluster light constructed in accordance with those patents commercially successful. The arrangement of the contact plate with oblique side walls provided a strong and secure mechanical support for the lamps, and the most effective arrangement of the lamps in a cluster. The substitution of a metallic hemispherical casing having an opening opposite each lamp receiver, and the introduction of the necessary insulating material in bushings passing through the openings, upon which the threaded shells were screwed, permitted the external structure to be made of metal, instead of porcelain as in the Weeks patent. It was commercially essential, to prevent the danger of fire and injury or annoyance to persons, to have the exterior part of the structure insulated. This was accomplished in the Weeks patent by making the exterior of porcelain, an insulating material. But porcelain is a substance so brittle and easily broken, and so difficult to easily mold into different forms, that it is obvious that an external metallic casing, if it could be safely insulated, would be far superior commercially. It can be made much cheaper; it is less liable to break or become disarranged; it is capable of great variety of form and ornamentation and in the kind of metal employed. The clusters manufactured under the Benjamin patent immediately entered into extensive

commercial use. I think that there is sufficient mechanical invention shown in the Benjamin patents to make the patents valid.

Upon the question whether the clusters manufactured by the defendants under the patent issued to Dale infringed the complainant's patents, I have felt much doubt. The Dale patent certainly does not differ greatly from the Benjamin patents, and particularly patent No. 721,-777, commonly spoken of as the second patent in suit. The essential distinction between them is that in the Dale patent the two contact plates and the insulating base between them, instead of being fastened to the upper part of the lamp, and being a support for the lower hemispherical casing, is placed within the lower hemispherical casing, and is supported by it. In the Dale patent the lower hemispherical casing is also made easily detachable by a bayonet joint, instead of being permanently secured to the upper part of the lamp, and the insulating ring, a, in the second patent in suit is dispensed with. In the Benjamin patents, there is a provision for a removable cap at the bottom of the hemispherical casing, through which to obtain access to the interior for the purpose of connecting the wires to the binding posts. The defendants' structure by which the entire hemispherical covering is removed, and the essential electrical device in the structure is removed with it, is much more easily put in position, and the wires properly connected; and, in case any repairs are necessary, is more easily taken down and put in order than the Benjamin structure, which has to be placed in position, and then the wires attached through the small opening in the bottom by workmen standing under it. The Benjamin patent contains several claims for a removable cover; but I think that the term "a removable cover," in the Benjamin patent, refers to a cap additional to the external casing, as illustrated in the drawings and specifications. If the only change made in the Dale patent had been to make the hemispherical casing in the Benjamin patents easily removable, I hardly think that would involve invention. But I think the arrangement in the Dale patent, by which the contact plates and the insulating base are placed in and supported by the hemispherical casing, and the insulating ring, a, shown in the second Benjamin patent, is omitted, shows a structure resulting in sufficient mechanical superiority to or difference from the Benjamin patents to show independent invention over the prior art open to the use of each. This was the view of the Patent Office. The original claims in the Dale patent were 12 in number. All of them were rejected, 11 on the ground that the Benjamin patents anticipated them. The application was then amended by striking out the claims as originally drawn, and substituting others which based the invention substantially on the combination of a removable cap and a block of insulating material between two contact plates, the block and contact plates being supported wholly by the cap.

Quite elaborate arguments were made by the respective counsel upon the question as to what is the insulating base of the second Benjamin patent; the defendants claiming that the ring, a, is the insulating base, within the meaning of that term as used in the Benjamin patent, and that, as the defendants' structure contains no such ring, it did not infringe. The ring, a, in the Benjamin second patent is, in a certain

sense, an insulating base. In Benjamin's first patent, the block of insulating material extending across the entire top of the cluster is obviously the insulating base, and in his second patent, he has practically taken out the center of this block, leaving the exterior ring in its original situation, and placed the center of the block lower down. But the true and essential insulating basis of the electrical structure in the second Benjamin patent, as in all the wireless clusters, is not the ring, a, but is the body of insulating material between the two contact plates; and, in that sense, in my opinion, the insulating base of the defendants' patent is substantially the same as the insulating base of both the Benjamin patents. In short, I cannot see any substantial and essential electrical distinction between the Dale patent and the two Benjamin patents; but, as I have already stated, I can see no substantial electrical distinction between these patents and the prior English patent to Brougham and the Weeks patent. Dale, when he applied for his patent, had the same right as Benjamin had to use the electrical devices shown in the Brougham patent and the Weeks patent. The fact that the complainant has since purchased the Weeks patent does not affect the question. The bill contains no allegation of a right to recover on the Weeks patent. Benjamin produced by mechanical invention a wireless cluster of electric lights commercially superior to anything which had preceded it. Dale had the right to do the same thing, provided he did not infringe the Benjamin patents. While I think it a close question, my conclusion is that Dale's patent involved sufficient mechanical invention distinct from the Benjamin patents to make it valid. Upon the whole, I think that the defense of the invalidity of the complainant's patent is not sustained, but that the defense of noninfringement is sustained.

My conclusion is that the bill should be dismissed, with costs.